IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANDRE WILLIAMS, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.: 4:20-CV-3358 |
| | § | |
| KILOLO KIJAKAZI, ACTING | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Andre Williams filed this case under the Social Security Act, 42 U.S.C. §§ 405(g) for review of the Commissioner's final decision denying his request for social security disability insurance benefits.[1] Pending before the Court are the Commissioner's Cross-Motion for Summary Judgment (ECF 17, 18) and Plaintiff's Amended Motion for Summary Judgment and Response (ECF 22).[2]  After considering the pleadings, the record, and the applicable law, the Court RECOMMENDS that Plaintiff's motion be DENIED, the Commissioner's motion be GRANTED, and the final decision of the Commissioner be AFFIRMED.

I.   **Background**

   **A.  Procedural History**

Andre Williams filed an application for disability insurance benefits under Title II of the Social Security Act on January 25, 2017, alleging disability beginning May 15, 2009.  Following

---

[1] The District Judge referred this case to this Magistrate Judge for pre-trial management pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and the Cost and Delay Reduction Plan under the Civil Justice Reform Act.  ECF 24.
[2] Plaintiff's initial Motion for Summary Judgment (ECF 21) is terminated as moot in light of the Amended motion filed the same day.

the denial of his application and subsequent request for reconsideration, Williams requested a hearing before an Administrative Law Judge ("ALJ"). A hearing took place on April 8, 2019, at which Williams and a vocational expert, James Fullilove, testified. The ALJ issued a decision on April 19, 2019, finding Williams was not disabled within the meaning of the Social Security Act through June 30, 2012, the date last insured. Tr. 16-25. The Appeals Council denied review on July 20, 2020 (Tr. 1-6), and the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

### B. Standard for Review of the Commissioner's Decision

Federal court review of the Commissioner's final decision to deny Social Security benefits is limited to two inquiries: (1) whether the Commissioner applied the proper legal standard and (2) whether the Commissioner's decision is supported by substantial evidence. *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted). When reviewing the Commissioner's decision, the court does not reweigh the evidence, try the questions de novo, or substitute its own judgment for that of the Commissioner. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (citing *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Id*.

### C. Disability Determination Standards

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must follow a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

At the first step, the ALJ decides whether the claimant is currently working or "doing substantial gainful activity." *Id*. at §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the claimant is not disabled. At the second step, the ALJ must determine whether the claimant has a severe impairment. *Id*. at §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant's impairment does not have a de minimis impact on her ability to work, she is not disabled. *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). The third step of the sequential analysis requires the ALJ to determine whether the claimant's severe impairment meets or medically equals one of the listings in the regulation known as Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. p, app. 1. If so, the claimant is disabled. If not, the ALJ must determine the claimant's "residual functional capacity" (RFC). "The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments." *Giles v. Astrue*, 433 F. App'x 241, 245 (5th Cir. 2011). At step four, the ALJ determines whether the claimant's RFC permits him to perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the answer is no, the ALJ determines at step five whether the claimant can perform other work that exists in the national economy. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). The claimant bears the burden to prove disability at steps one through four, but the burden shifts to the Commissioner at step five. *Newton v. Apfel*, 209 F.3d 448, 452-53 (5th Cir. 2000).

**D. The ALJ's Decision**

The ALJ performed the standard five-step sequential analysis. *See* Tr. 16-26. First, the ALJ found Plaintiff has not engaged in substantial gainful activity from the date of alleged onset of disability, May 15, 2009, through his date last insured, June 30, 2012. Tr. 18. Next, the ALJ determined that during the relevant period Plaintiff had the severe impairments of congestive heart

3

failure, diabetes mellitus, degenerative disc disease, and obesity. *Id*. At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, meet or equal the severity of one of the listed impairments in Appendix 1. *Id.* at 18-19. The ALJ found Plaintiff had the residual functional capacity to perform the full range of sedentary work as it is defined in 20 C.F.R. § 404.1567(a) but was unable to perform his past relevant work as an assembler of motor vehicles. *Id.* at 20-24. After considering Williams's age, education, work experience, and RFC, and referring to the Medical-Vocational Guidelines in 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ determined that Plaintiff was not disabled at any time from May 15, 2009 through June 30, 2012.

## II. Analysis

Claimant argues that the ALJ's RFC determination is the result of legal error because the ALJ did not give controlling weight to the opinion of his treating physician, Dr. Soran Hong. ECF 22 at 5. He also alleges the ALJ erred when affording the opinion no weight because he did not properly consider all of the factors set forth in 20 C.F.R. § 404.1527(c).[3] *Id.* at 6. Claimant further argues the ALJ's decision is not supported by substantial evidence because at Step 5 he did not rely on testimony from a vocational expert. Finally, the Claimant argues the ALJ's RFC determination is not supported by substantial evidence because no medical evidence in the record disputes Dr. Hong's opinion and therefore the ALJ must have relied on his own opinion when rejecting it. ECF 22 at 9.

### A. The ALJ's RFC determination did not result from legal error.

#### 1. Standards for considering a treating physician opinion.

---

[3] The revised standards for consideration of medical opinions set forth in 20 C.F.R. § 404.1520(c), effective as of March 27, 2017, are not applicable in this case because Plaintiff filed his application for benefits in January 2017.

4

A treating physician's opinion regarding the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. *Id.*; *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). Nonetheless, the treating physician's opinions are not always conclusive. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); *see also Zahraei v. Colvin*, No. SA-16-CV-396-XR, 2017 WL 3034716, at *8 (W.D. Tex. July 17, 2017) (holding that a treating physician's medical opinion is not always controlling and an ALJ can give the medical opinions of other non-treating physicians significant weight). When good cause is shown, the ALJ is free to reject, assign less weight, little or even no weight, to the opinion of a treating physician:

> Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.

*Newton*, 209 F.3d at 456; *see also Greenspan*, 38 F.3d at 237; *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (holding that an ALJ is free to reject the opinion of any physician, including a treating physician, when the evidence supports a contrary conclusion). Absent contrary evidence from an examining physician, the ALJ must consider the following factors when deciding to reject the opinion of a treating physician: (1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017) (citing *Newton*, 209 F.3d at

5

453).[4]  "Where there is reliable medical evidence from a treating or examining physician that controverts the claimant's physician, the detailed inquiry of each factor in [§ 404.1527(c)(2)] is unnecessary." *Nguyen v. Colvin*, Civil Action No. 4:13-CV-2957, 2015 WL 222328, *10 (S.D. Tex. Jan. 14, 2015).  Further, a physician's statement that a claimant is not able to work, is disabled, or has a particular RFC, is not entitled to any special significance, because it is not a medical opinion. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

## 2.      The ALJ did not err in affording no weight to the Dr. Hong's opinion.

Plaintiff's treating physician, Dr. Hong, provided a Medical Source Statement dated October 19, 2011.  Tr. 571-74.  Dr. Hong opined that Williams could lift or carry no more than 10 pounds, could stand and/or walk less than 2 hours in an 8-hour workday and sit less than 6 hours in an 8-hour workday, had limitations in pushing or pulling in lower extremities, could never climb, balance, kneel, crouch, crawl, stoop, and had limitations in exposure to temperature extremes, noise, dust, vibration, humidity/wetness, hazard, fumes, odors, chemicals, and gases. *Id.*  Dr. Hong based the exertional limitations noted above on Plaintiff's cardiac arrythmia and radiculopathy; the postural limitations on Plaintiff's diabetic neuropathy; and the environmental limitations on Plaintiff's cardiac condition. *Id.*; Tr. 23.

The April 19, 2019 decision reflects that the ALJ carefully reviewed Dr. Hong's opinion and considered the 20 C.F.R. § 404.1527 factors, which he cited.  Tr. 22-23.  The ALJ concluded that Dr. Hong's RFC opinion "cannot be accorded any weight because it is contradicted by Dr. Hong's own medical records as well as medical evidence obtained from specialists during the relevant period of May 15, 2009 to June 30, 2012."  Tr. 23.  As for Dr. Hong's own records, the ALJ specifically cited normal neurological and musculoskeletal examinations in November 2010

---

[4] *Newton* refers to the criteria set forth in 20 C.F.R. § 404.1527(d)(2), but at the time Williams filed his application the regulation appeared at 20 C.F.R. § 404.1527(c)(2). *Kneeland*, 850 F.3d at 760 n.52.

and unremarkable examinations in April 2011 and 2012, "despite the claimant's complaints." *Id.* As for other medical evidence, the ALJ specifically cited evidence from Plaintiff's treating cardiologist, Dr. Anwar Ahmad, that shows largely unremarkable results of objective testing in May and June 2011 and shows that he took Plaintiff off Warfarin because "patient is in sinus rhythm[5] and it has been more than three weeks" since an April 2011 hospitalization. Tr. 23, 619, 626. In addition, the ALJ cited records from a neurologist, Dr. Edward Murphy, who examined Plaintiff in September 2011 and found limited range of motion of the lumbar spine but noted his straight leg raise was negative and heel and toe walking were normal. Tr. 23, 617-18. A November 2011 x-ray showed only mild degenerative changes of the spine and no acute cardiopulmonary abnormalities. Tr. 23, 425. Records from Plaintiff's admission to St. Joseph Medical Center in April 2012 for chest pain show that Plaintiff had no acute symptoms, a regular heart rhythm, and no arrhythmia at that time. Tr. 23, 603-04. At that time, Dr. Ahmad evaluated Plaintiff's cardiac enzymes and "MI[6] was ruled out" and no further cardiac workup was required. Tr. 23, 297.

In reaching his decision to give Dr. Hong's opinion no weight, the ALJ: (i) noted that Dr. Hong established a primary care relationship with Plaintiff in November 2010; (ii) cited medical records describing the nature of the treating relationship and treatment provided by Dr. Hong; (iii) found that Dr. Hong's opinion was not supported by Dr. Hong's own records or the record as a whole and cited examples; and (iv) cited treating specialists in the areas of cardiology and neurology whose records did not support Dr. Hong's opinion of the nature of Plaintiff's cardiac and neurological impairments. *See* Tr. 20-23. The Court finds no legal error in the ALJ's consideration of Dr. Hong's Medical Source Statement.

---

[5] "Sinus rhythm" refers to the normal beat of the heart when it is working the way it should. *See* https://www.webmd.com/heart-disease/atrial-fibrillation/afib-normal-sinus-rhythm (last visited 5/4/2022).
[6] "MI" stands for myocardial infarction, commonly known as a heart attack. *See* https://my.clevelandclinic.org/health/diseases/16818-heart-attack-myocardial-infarction (last visited 5/5/2022).

Plaintiff also contends the ALJ erred because Dr. Hong's opinion stated that he suffered from non-exertional limitations. Other than Dr. Hong's opinion, which was disregarded by the ALJ without error, no other evidence in the record supports non-exertional limitations. Therefore, the ALJ did not err in relying on the Medical-Vocational Guidelines to determine that Plaintiff could perform jobs that exist in significant numbers in the national economy and thus was not disabled.

### B. Substantial evidence supports the ALJ's decision.

The ALJ found Plaintiff had the RFC to perform a full range of sedentary work as defined in 20 C.F.R. 404.1567(a):

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

The ALJ found that while "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . .." Tr. 20. Plaintiff testified that he experienced a racing heart upon exertion, including while mowing the lawn in April 2011, and that his symptoms have worsened since that date. *Id.* However, the ALJ relied on medical evidence showing normal cardiology evaluations during the relevant period, including a determination by his cardiologist that his chest pains in April 2012 were not due to a cardiac incident. Tr. 20-22. Moreover, medical records demonstrated mostly unremarkable medical exams by Dr. Hong during the relevant period. *Id.* A stress test in June 2011 was unremarkable. Tr. 21; 623. A chest x-ray and neurological

exam in September 2011 were normal. *Id.*; Tr. 333-66. The ALJ based his decision on his review of the record as a whole for the relevant period. Tr. 23.

Plaintiff further argues that the ALJ's decision is not supported by substantial evidence because the ALJ did not rely on testimony from the vocational expert in reaching his conclusion at step 5 of the sequential analysis. "In determining whether the claimant can do any other work, the Secretary considers the claimant's residual functional capacity, together with age, education, and work experience, according to the Medical–Vocational Guidelines set forth by the Secretary." *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (citing 20 C.F.R. § 404.1561). When the claimant has only exertional impairments, or his non-exertional impairments do not significantly impact his RFC, the ALJ may rely exclusively on the Guidelines to determine whether there are jobs in the national economy that the claimant can perform. *Id.*; TITLES II & XVI: CAPABILITY TO DO OTHER WORK-THE EXERTIONALLY BASED MED.-VOCATIONAL RULES MET, SSR 83-11 (S.S.A. 1983) ("The criteria of a rule are met--and the rule directs a decision of "Disabled" or "Not disabled"--where an individual's RFC, age, education, and work experience coincide with the corresponding factors in the rule. . . The RFC upon which each table rule is based reflects the absence of any nonexertional limitation."). That is exactly what the ALJ did in this case.[7] Tr. 24.

## III.     Conclusion

For the reasons discussed above, the Court concludes that the ALJ's decision is supported by substantial evidence and is not based on an error of law. Thus, the Court **RECOMMENDS** that Williams's motion be **DENIED**, the Commissioner's motion be **GRANTED**, and the Commissioner's decision denying benefits be **AFFIRMED**.

---

[7] Specifically, the ALJ relied on Medical-Vocational Rule 201.27, which directs a finding a "not disabled" for an individual of Plaintiff's age, education, and work experience.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c).  Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on May 31, 2022, at Houston, Texas.

                                              Christina A. Bryan
                                          United States Magistrate Judge